IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **BARBARA B.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Civil No. TMD 20-2187 |
| v. | * | |
| | * | |
| | * | |
| **KILOLO KIJAKAZI,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |

**\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION GRANTING PLAINTIFF'S <u>ALTERNATIVE MOTION FOR REMAND</u>

Plaintiff Barbara B. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**.

I

**Background**

Plaintiff protectively filed applications for DIB and SSI on August 1, 2016, alleging disability beginning on January 15, 2014. R. at 10. After the Commissioner denied Plaintiff's claims initially and on reconsideration, she requested a hearing. R. at 10. On June 27, 2019, Administrative Law Judge ("ALJ") George Gaffaney held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 29-55. The ALJ thereafter found on July 24, 2019, that Plaintiff was not disabled from January 15, 2014, through the date of the ALJ's decision. R. at 7-21. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since January 15, 2014, and that her seizure disorder, asthma, and obstructive sleep apnea were severe impairments. R. at 12-13. She did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 13.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, crouch, kneel, or crawl. She can occasionally be exposed to extreme heat, but never be exposed to hazards.

R. at 13-14.[3]  In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a receptionist.  R. at 16.  The ALJ thus found that Plaintiff was not disabled from January 15, 2014, through July 24, 2019.  R. at 16-17.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on July 28, 2020, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-13, ECF No. 16-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 5.  In particular, she contends that the ALJ "failed to perform a function-by-function assessment of [her] work-related abilities, and instead simply concluded that [she] was capable of performing light work."  *Id.*  Plaintiff also asserts that the ALJ failed to evaluate properly the opinions of Allan Azarion, M.D., her treating physician (R. at 1040-42).  *Id.* at 7-13.  Plaintiff finally maintains that the ALJ erroneously evaluated her subjective complaints.  *Id.* at 13-16.  For the reasons discussed below, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

> work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Court first addresses the ALJ's evaluation of Dr. Azarion's opinions. Pl.'s Mem. Supp. Mot. Summ. J. 7-12, ECF No. 16-1. In weighing the opinion evidence, the ALJ stated:

> In May 2019, Dr. Azarion opined that [Plaintiff] could not maintain regular employment; could not complete tasks in a customary production schedule; could not concentrate in a work setting; and could not complete a normal workday. Pursuant to the Regulations, a treating source's opinion may be

8

> entitled to controlling weight if it is supported by acceptable medical evidence and not inconsistent with other significant record evidence. Dr. Azarion's opinion is not entitled to controlling weight in this case. This opinion is extreme and not supported by either Dr. Azarion's own records or other substantial evidence. Therefore, the undersigned gives Dr. Azarion's opinion little weight.

R. at 15-16 (citation omitted).

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (alteration in original) (citations omitted); *see* 20 C.F.R. §§ 404.1527, 416.927.

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2)(i)-(6), 416.927(c)(2)(i)-(6). While

9

"an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. R. at 14. It does not appear, however, that the ALJ meaningfully considered each of the factors under §§ 404.1527(c) and 416.927(c) before deciding how much weight to give Dr. Azarion's opinion. *See Dowling*, 986 F.3d at 385; *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020). Although it seems that the ALJ considered the consistency of the opinion with the record as a whole and its supportability, the ALJ apparently did not consider other factors under 20 C.F.R. §§ 404.1527(c)(6) and 416.927(c)(6), such as his understanding of disability programs and their evidentiary requirements and the extent of his familiarity with the other information in Plaintiff's case record. Defendant maintains that the ALJ addressed earlier in his decision the length, nature, and extent of Dr. Azarion's treatment relationship; the frequency of the doctor's examination of Plaintiff; and the doctor's specialization (R. at 15). Def.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 19-1. The ALJ, however, "never so much as hinted that his discretion was checked by the factors enumerated in [§§ 404.1527(c) and 416.927(c)], which it is. In failing to acknowledge and apply each of these six factors, the ALJ erred." *Dowling*, 986 F.3d 385-86. A remand is thus warranted. *See id.* at 386 ("Two of the factors ignored by the ALJ -- those which relate to the length, frequency, nature, and extent of [the claimant's] treatment relationship with [her treating physician] -- appear to cut in [the claimant's] favor. . . . Had the ALJ properly considered the treatment relationship between [the treating physician] and [the claimant], he may

10

not have been so quick to reject [the treating physician's] medical opinion. This is significant, because if the ALJ had accorded greater weight to [the treating physician's] opinion that [the claimant] was incapable of sitting for even two hours total in an eight-hour working day and that she frequently experienced pain so severe that it interfered with her attention and concentration, this reasonably could have altered the ALJ's conclusion that [the claimant] was capable of performing sedentary work.").

In addition, "[t]he failure to consider each of the 20 C.F.R. [§§ 404.1527(c) and 416.927(c)] factors was not the only error committed by the ALJ. The ALJ was also required to assess [Plaintiff's] RFC when determining her disability status." *Id.* The ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." R. at 14. As noted above, every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling*, 986 F.3d at 387. Here, although the ALJ acknowledged 20 C.F.R. §§ 404.1545 and 416.945 and SSR 96-8p (R. at 12), "the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how [Plaintiff's] impairments impacted [his] ability to work." *Id.* Rather, the ALJ's RFC assessment was based on SSR 16-3p, which sets out the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and to determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *See id.* (citing SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)). "Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC evaluation." *Id.* (citing 20 C.F.R.

11

§ 416.945(a)(3)). "But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Id.*

"The ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment" that requires the Court to remand this case. *Id.* at 388. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ in this case, however, "began with step three, noting at the outset of his RFC evaluation that [Plaintiff] only '[has] the residual functional capacity to perform [light] work'" (R. at 13). *Dowling*, 986 F.3d at 388. "Only then did the ALJ identify evidence and attempt to explain how that evidence logically supported his predetermined conclusion" (R. at 14-16). *Id.* The ALJ thus erred in stating Plaintiff's RFC first and then concluding that the limitations caused by her impairments were consistent with that RFC. *See Thomas*, 916 F.3d at 312; *Monroe*, 826 F.3d at 188. Although the Fourth Circuit has declined to impose a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, "the lack of a rule *requiring* remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis." *Dowling*, 986 F.3d at 388. The Court finds that remand is appropriate here because of the ALJ's failure to engage in a function-by-function analysis.

The Court next turns to Plaintiff's assertion that the ALJ applied an improper standard in evaluating her pain. Pl.'s Mem. Supp. Mot. Summ. J. 13-16, ECF No. 16-1. The Fourth Circuit recently reiterated the standard used by ALJs to evaluate a claimant's symptoms:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.

> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them.

*Arakas*, 983 F.3d at 95 (alteration in original) (citations omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 14. As noted above, there does not need to be objective evidence of the claimant's pain itself or its intensity. *Arakas*, 983 F.3d at 95. Rather, the claimant is entitled to rely exclusively on subjective evidence to prove the second part of the test above. *Id.* In other words, "disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." *Id.* at 98. "Thus, [the ALJ] 'improperly increased [Plaintiff's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* at 96 (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). Moreover, to the extent that the ALJ stated that he considered other evidence, "ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." *Id.* at 97. The Court thus remands on this ground as well.

In sum, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888

F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *Lewis*, 858 F.3d at 868. Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings. *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694).

V

**Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: September 24, 2021

/s/
Thomas M. DiGirolamo
United States Magistrate Judge